**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Darro, | No. CV-21-08113-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for disability and disability insurance benefits under Title II of the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff filed a complaint with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's opening brief (Doc. 16), the Commissioner's answering brief (Doc. 19), and Plaintiff's reply (Doc. 20). The Court has reviewed the briefs and Administrative Record (Doc. 15, AR) and now affirms.

**I.     PROCEDURAL HISTORY**

On January 3, 2017, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on June 30, 2016. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id*.) On December 2, 2020, following several hearings, the ALJ issued an unfavorable decision. (*Id*. at 15-27.) The Appeals Council later denied review.

## II. THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.  THE ALJ'S DECISION

The ALJ found that Plaintiff was not presently engaged in substantial, gainful work activity and that Plaintiff had the following severe impairments: cervical spondylosis with radiculitis; ankyloses of the sacroiliac ("SI") joint; lumbar spondylosis; and obesity. (AR at 18.)[1] The ALJ also concluded that Plaintiff's severe impairments did not meet or medically equal a listing. (*Id.* at 20-21.) The ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally push and pull with bilateral upper extremities, climb ramps and stairs, balance, kneel, stoop, and crouch. He should never climb ladders, ropes and scaffolds, or crawl. In addition, the claimant can occasionally reach overhead and frequently reach in all other directions. He can frequently handle and finger. Further, the claimant should avoid extreme cold, vibration, and hazards, including moving machinery and unprotected heights.

(*Id.* at 21.)

As part of this RFC determination, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 22.) In part, this was because the ALJ found that Plaintiff's "own description of his activities of daily living are not nearly as limited as one would expect given his complaints of disabling symptoms and limitations." (*Id.* at 23.) As for the opinion evidence, the ALJ made the following determinations: (1) "[t]he assessments of the medical consultants for the State Agency were given partial weight in this case based on their consistency with the greater objective medical evidence of record" (*id.* at 23); (2) the opinion of consultative examiner Robert Gordon, D.O., was "afforded partial weight" (*id.* at 23-24); (3) the opinions of Plaintiff's treating physician, Hojat Askari, M.D., were afforded "little weight" for reasons

---

[1] The ALJ also found that Plaintiff had various non-severe impairments, including "diabetes mellitus, hyperlipidemia, hypertension, reactive airway disease, hypoxia due to smoke inhalation, cellulitis, trigger finger of the right ring finger, left lateral epicondylitis, and mild osteoarthritis of the knees" and "unspecified depressive disorder." (AR at 18-19.) The ALJ clarified that all of Plaintiff's impairments, including the non-severe ones, were considered when determining Plaintiff's RFC. (*Id.*)

described more fully below (*id.* at 24-25); and (4) "the non-medical source opinion of [Plaintiff's] son" was deemed "not persuasive" because it was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case, as well as the course of treatment pursued and the objective finding" (*id.* at 25).

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a store manager and sales manager. (*Id.* at 25-26.) Additionally, the ALJ concluded that various "other jobs . . . exist in significant numbers in the national economy that [Plaintiff] can also perform," including assembler of small products, mail clerk, and housekeeper. (*Id.* at 26-27.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 27.)

## IV. DISCUSSION

Plaintiff presents one issue on appeal—whether the ALJ erred when discrediting the opinions of his treating physician, Dr. Askari. (Pl. Br. at 10-14.) As a remedy, Plaintiff seeks "[r]eversal for immediate award of benefits . . . under the credit-as-true test." (*Id.* at 15.)

### A. Old Regulations

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). However, the new regulations only apply to applications filed on or after March 27, 2017. Plaintiff's application was filed in January 2017, so the old regulations remain applicable.

Under the old regulations, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is because treating physicians have the advantage of in-person interaction and typically a longer

history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Given this hierarchy and a treating physician's position at the top if it, under the old regulations, an ALJ may reject uncontroverted evidence from a treating physician "only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830. Alternatively, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (citation omitted). Normally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Id.* at 831. But where "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). When that is the case, an ALJ can satisfy his burden of providing specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989); *see also Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

B.     The ALJ's Evaluation Of Dr. Askari's Opinions

Dr. Askari issued multiple opinions regarding Plaintiff. First, in a questionnaire entitled "Cervical Spine (Neck) Disorder Including Lumbar Impairments," which was completed in February 2017, Dr. Askari opined, *inter alia*, that Plaintiff had the ability to stand and/or walk and sit for less than one hour in an eight-hour workday, would need to take unscheduled breaks of 15-30 minutes on an hourly basis, could "never" carry less than 10 pounds, and would be absent from work more than four times a month. (AR at 685-89.) Dr. Askari offered the same opinions in another version of this questionnaire

completed in October 2018. (*Id.* at 708-12.)

Second, in a questionnaire entitled "Headache Impairment Questionnaire," which was completed in October 2018, Dr. Askari opined, *inter alia*, that Plaintiff would need to take at least 8-10 unscheduled breaks of 15-30 minutes during an eight-hour workday and be absent from work more than four times a month. (*Id.* at 713-15.) Dr. Askari offered similar opinions in another version of this questionnaire completed in June 2019. (*Id.* at 1279-81.)

Third, in a questionnaire entitled "Physical Ability To Do Work-Related Activities," which was completed in October 2018, Dr. Askari opined, *inter alia*, that Plaintiff had a hip, thigh, knee, or leg impairment; that Plaintiff had a shoulder and/or arm condition; that Plaintiff had functional loss or functional impairment in his spine; that Plaintiff had functional loss or functional impairment of the hand; that Plaintiff had chronic, daily headaches; and that these conditions created an "extreme" impairment of Plaintiff's ability to deal with any work-related stress, precluded Plaintiff from occasionally lifting and/or carrying less than five pounds, and would cause Plaintiff to be absent from work more than four times a month. (*Id.* at 723-25.) Dr. Askari offered similar opinions in other versions of this questionnaire completed in June 2019 (*id.* at 1282-84) and February 2020 (*id.* at 1364-66).

Fourth, in a questionnaire entitled "Pulmonary Impairment," which was completed in February 2020, Dr. Askari opined, *inter alia*, that Plaintiff had been diagnosed with "Z77.098, Rob.02" arising from "[r]ecent exposure to toxic chemicals"; that this condition caused shortness of breath, chest tightness, palpitations, fatigue, and coughing; that these symptoms would "Constantly" interfere with Plaintiff's attention and concentration; and that Plaintiff was "Incapable of even 'low stress' jobs." (*Id.* at 1367-71.)

The ALJ concluded that "little weight" should be afforded to Dr. Askari's opinions. (*Id.* at 24.) The ALJ provided the following three-paragraph explanation for this determination:

> Hojat Askari, M.D., offered multiple medical opinions where he asserted the claimant was unable to perform full time employment, as he could sit less than 2 hours and stand/walk less than 2 hours of an 8-hour workday, and the claimant's impairments and symptoms would frequently interfere with attention and concentration. According to Dr. Askari, the claimant can never twist, stoop/bend, crouch, climb, balance, or crawl. Dr. Askari opined the claimant had severe limitations due to daily headaches and pulmonary issues; however, to this provider, the claimant denied headache, chest pain, shortness of breath, dizziness, weakness, or cough. Moreover, this provider completed a medical source statement pertaining to the claimant's mental abilities, but opined the mental limitations were the result of back and neck pain and hypertension, heart arrhythmia, and memory loss. However, this provider's own progress notes fail to document of any memory loss nor has the claimant complained of such or sought treatment for such. There is no basis for memory loss and Dr. Askari failed to provide an explanation of the evidence relied upon in rendering this assertion.
>
> Further, Dr. Askari opined the claimant was on disability due to physical impairments. The undersigned notes that an opinion that an individual is disabled remains an issue reserved to the Commissioner. There is no evidence Dr. Askari is familiar with the definition of "disability" contained in the Social Security Act and Regulations.
>
> Overall, Dr. Askari's opinions contrast sharply with other evidence in the file, including his own observations and clinical findings. For instance, Dr. Askari observed that the claimant appeared in no acute distress. Examinations conducted by Dr. Askari were typically unremarkable, demonstrating clear lungs to auscultation bilaterally without wheezes, rales, or rhonchi and intermittent tenderness to palpation of the lumbar spine with painful range of motion. Dr. Askari serves as a family practitioner and it appears he has rendered opinions on impairments outside his area of expertise. The course of treatment pursued is not consistent with what one would expect if the claimant were truly as limited as Dr. Askari opined—as it is all rendered by a family practitioner, who routinely refills medication without changes. Dr. Askari simply checked boxes on forms and failed to provide an explanation of the evidence relied upon in forming this opinion. Furthermore, these limitations appear more extreme than even the claimant's own admitted abilities. For these reasons, little weight is afforded to these opinions.

(*Id.* at 24.)

…

C. Plaintiff's Arguments

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discrediting Dr. Askari's opinions. (Doc. 16 at 10-14.) First, Plaintiff contends that the ALJ inaccurately characterized Dr. Askari as a "family practitioner" and proceeded to discount some of Dr. Askari's opinions on the ground that they fell outside his area of expertise. (*Id.* at 10-11.) Plaintiff contends that Dr. Askari is a specialist in the field of internal medicine and that it was, in any event, reversible error to discount Dr. Askari's opinions based on his purported status as a family practitioner because an ALJ cannot categorically reject a medical source's opinions due to the source's lack of specialization. (*Id.*) Second, Plaintiff argues that the ALJ's decision to discount Dr. Askari's opinions based on their purported inconsistency with Plaintiff's description of his symptoms during certain visits (*i.e.*, "denying headache, chest pain, shortness of breath, dizziness, weakness, or cough") was erroneous because Dr. Askari's opined-to limitations were based on Plaintiff's "long-standing medically determinable impairments, not . . . short-term condition[s] which [a]re not relevant as to what exertional or non-exertional limitations Plaintiff would experience on a regular and continuing basis." (*Id.* at 11-12.) Third, as for the ALJ's determination that Dr. Askari's opinions "contrast sharply with the other evidence in the file, including his own observations and clinical findings," Plaintiff contends that the purportedly conflicting evidence is not really conflicting because "normal pulmonary functioning[] is not inconsistent with Dr. Askari's medical statements as no one has alleged Plaintiff's pulmonary functioning was impaired and Dr. Askari's finding Plaintiff functionally limited to Plaintiff's spinal conditions and accompanying pain is consistent with tenderness and pain of the spine upon palpitation." (*Id.* at 12-13,) Fourth, as for the ALJ's determination that Dr. Askari's opinions were inconsistent with Plaintiff's course of treatment, Plaintiff contends this determination was not only infected by the ALJ's misunderstanding of Dr. Askari's specialization in internal medicine but was also factually unsupported because "Plaintiff has undergone surgery to address his spinal impairments, along with epidural steroid injections, without success.

Epidural injections do not constitute 'conservative' treatment, nor does *surgery*." (*Id.* at 13-14.) Fifth, as for the ALJ's determination that Dr. Askari's opinions could be discounted because they were set forth in a check-box form, Plaintiff contends this is a legally insufficient basis for discounting a treating physician's opinions under Ninth Circuit law. (*Id.* at 14.) Sixth, and finally, as for the ALJ's determination that Dr. Askari's opinions were inconsistent with Plaintiff's "own admitted abilities," Plaintiff does not dispute the factual accuracy of this determination but contends it was a legally invalid basis for discounting Dr. Askari's opinions because "[t]here is no rule, regulation, or statute, binding a treating physician to render an opinion only as limiting as their patient reports . . . . The fact that Dr. Askari found Plaintiff's impairments more limiting than the ALJ believes Plaintiff has reported does not establish Dr. Askari's medical statements are contradicted by the evidence of reord; at best it establishes the objective evidence of record establishes *greater* functional impairment than Plaintiff's subjective reports." (*Id.*)

D. Analysis

The Commissioner offers a detailed response to Plaintiff's various challenges to the sufficiency of the ALJ's reasoning for discrediting Dr. Askari's opinions (Doc. 19 at 5-13), but the Court finds it unnecessary to offer a point-by-point summary because two of the Commissioner's arguments are dispositive.

As noted, one of the ALJ's proffered reasons for discounting Dr. Askari's opined-to limitations was that they were "more extreme than even the claimant's own admitted abilities." (AR at 24.) Plaintiff does not dispute the factual accuracy of the ALJ's analysis on this point—he simply disputes whether, as a legal matter, it provides a valid basis for discrediting the opinion of a treating physician. (Pl. Br. at 14.) In response, the Commissioner argues that this does, in fact, qualify as a valid basis for discrediting a treating physician's opinion under Ninth Circuit law and cites supporting cases. (Doc. 19 at 10.)[2] In reply, Plaintiff does not address the cases cited in the Commissioner's brief and

---

[2] More specifically, the Commissioner argues: "[T]he ALJ highlighted that Dr. Askari's opinions are more limiting than Plaintiff's own admitted abilities (AR 24). Despite asserting such extreme limitations, such as that Plaintiff had marked limitations in activities of daily living and had constant issues with concentration (see AR 721), Plaintiff

- 9 -

simply asserts (without citation) that "there is no basis for asserting a physician cannot opine greater limitations than as asserted by their patient and the fact that Dr. Askari rendered an independent medical judgment is proper." (Doc. 20 at 3.)

The Commissioner has the better of this argument. The Ninth Circuit has squarely held that "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). *See also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that "the ALJ provided adequate reasons, under the appropriate legal standard, for finding that [treating physician] Dr. Young's opinion was not controlling" where "Rollins herself has never claimed to have any problems with many of the conditions and activities that Dr. Young instructed her to avoid" and "the restrictions appear to be inconsistent with the level of activity that Rollins engaged in"). Plaintiff may be correct that an ALJ is not *required* to reject a treating physician's opinions because they conflict with a claimant's own description of his limitations and activities, but an ALJ is *permitted* to reject a treating physician's opinions on this basis. That is exactly what the ALJ did here. This decision was free of legal error and supported by substantial evidence.

Separately, another of the ALJ's proffered reasons for discounting Dr. Askari's opinions was that they "contrast sharply with other evidence in the file, including [Dr. Askari's] own observations and clinical findings. For instance, . . . [e]xaminations conducted by Dr. Askari were typically unremarkable, demonstrating clear lungs to auscultation bilaterally without wheezes, rales, or rhonchi . . . ." (AR at 24.) Plaintiff, in turn, does not dispute that Dr. Askari made observations of "normal pulmonary functioning" but contends that such observations are "not inconsistent with Dr. Askari's medical statements as no one has alleged Plaintiff's pulmonary functioning was impaired." (Doc. 16 at 13.) In response, the Commissioner contends that Dr. Askari did, in fact,

---

was able to live independently, care for a small dog, prepare simple meals, manage his medication and appointments, handle his finances, perform light household chores, drive, shop outside the home, attend religious services monthly, and walk daily (AR 23, citing AR 427-31, 1286, 1302). *See Ford*, 950 F.3d at 1155 ('A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion'), citing *Rollins*, 261 F.3d at 856." (Doc. 19 at 10.)

- 10 -

"opine[] that Plaintiff had limitations due to . . . pulmonary issues." (Doc. 19 at 6.) Plaintiff does not appear to address this point in his reply—the word "pulmonary" does not appear in his brief. (Doc. 20.)

The Commissioner again has the better of this argument. One of the questionnaires that Dr. Askari completed was entitled "Pulmonary Impairment." (AR at 1367-71.) In this form, Dr. Askari stated that Plaintiff had been diagnosed with various pulmonary impairments arising from "[r]ecent exposure to toxic chemicals" and opined that the resulting symptoms would "Constantly" interfere with Plaintiff's attention and concentration and render Plaintiff "Incapable of even 'low stress' jobs." (*Id.*) It is therefore unclear why Plaintiff asserts that "no one has alleged Plaintiff's pulmonary functioning was impaired." (Doc. 16 at 13.) At any rate, Plaintiff does not dispute that the opinions expressed in the "Pulmonary Impairment" questionnaire are inconsistent with the observations of "normal pulmonary functioning" that Dr. Askari made during Plaintiff's visits. Such inconsistency qualifies as another specific and legitimate reason for discrediting the opinion of a treating physician. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (conflict with treating physician's "own treatment progress reports" qualified as a "specific and legitimate reason[] supported by substantial evidence" for discrediting the physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations.").

These determinations make it unnecessary to evaluate the sufficiency of the ALJ's other proffered reasons for discrediting Dr. Askari's opinions. Even if, as Plaintiff contends, the other reasons were legally insufficient or unsupported by substantial evidence, any error was harmless in light of the ALJ's error-free decision to discredit Dr. Askari's opinions based on their inconsistency with Plaintiff's own description of his abilities and activities and on their inconsistency with Dr. Askari's clinical observations. *See, e.g., Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("The ALJ discounted the

opinion of Dr. Cochran because the opinion was (1) excessive and inconsistent with the clinical findings in the record; (2) based largely on Reed's self-reports, rather than objective clinical findings; and (3) not supported by the prescribed treatment. To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] Baker has not shown these errors affected the ALJ's ultimate nondisability determination, as the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion . . . . As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App's 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment. This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus."). *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

…

…

…

…

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **affirmed**. The Clerk is directed to enter judgment accordingly.

Dated this 12th day of August, 2022.

Dominic W. Lanza
United States District Judge